IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FAMILY MEDICINE PHARMACY, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )     Civil Action No. 15-0590-KD-B |
| | ) |
| TRXADE GROUP, INC. and | ) |
| WESTMINSTER PHARMACEUTICALS, | ) |
| LLC,[1] | ) |
| | ) |
| Defendants. | ) |

## FINAL JUDGMENT AND ORDER APPROVING CLASS SETTLEMENT

This action is before the Court on the Joint Motion for Final Approval of Settlement and

Entry of Final Judgment (doc. 34), Plaintiff Family Medicine Pharmacy, LLC's Amended

Memorandum in support (doc. 36), the Notice of Compliance filed by the Claims Administrator

JND Legal Administration, d/b/a as JND Class Action Administration (doc. 33), the Affidavit in

support (doc. 33-1), Plaintiff and Class Counsel's Motion and Memorandum for Award of

Attorney's Fees, Expenses, and Incentive Payment for Class Representative (doc. 31), the

Affidavits in support (docs. 31-1, 31-2), and the Response filed by Defendants Trxade Group,

Inc., and Westminster, LLC (doc. 32).  Upon consideration of the Motions, briefs, and

supporting evidentiary submissions, the parties' respective positions as presented at the fairness

hearing held February 21, 2017, and for the reasons set forth herein, the Motions are

---

[1]  In the complaint, Plaintiff identified "Westminster, LLC" in the style of the case, but in
the first paragraph, identified "Westminster Pharmaceuticals, LLC" as the defendant (doc. 1).
The financial statement for Trxade Group, Inc. indicates that it owns 100% of Westminster
Pharmaceuticals, LLC (doc. 26-6, p. 10).  In the settlement agreement, Westminster
Pharmaceuticals, LLC is identified as a party.  There is no mention of "Westminster, LLC" in
either document.

GRANTED. Accordingly, the Court enters this Final Judgment and Order Approving Class Settlement.

I. Background

On November 18, 2015, Plaintiff filed this class action complaint alleging that Defendants violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 221, as amended by the Junk Fax Prevention Act of 2005 (the TCPA). Specifically, Plaintiff alleged that Defendants violated the Act by sending or "fax blasting" thousands of unsolicited faxed advertisements to Plaintiff and the putative class members to generate sales leads and advertise the commercial availability of Defendants' pharmaceutical products. Plaintiff also alleged that even with consent to receive faxed advertisements, the TCPA requires a notice on the advertisement that provides a cost-free mechanism to opt out of receipt, but Defendants violated the TCPA by omitting that notice.

In May 2016, Plaintiff notified the Court that the action was scheduled for mediation facilitated by the Honorable John L. Carroll to be held on June 6, 2016 (doc. 24). The mediation was successful and the parties reached a settlement as memorialized in the Class Settlement Agreement (doc. 26-1). According to the terms of the Class Settlement Agreement, a Settlement Fund of $200,000.00 was created.

In August 2016, Plaintiff filed an unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class with supporting documents (doc. 25, doc. 26, docs. 26-1 through 26-9). In the Class Settlement Agreement, the parties agreed to a Class Period defined as "January 2012 to the date of the Court's Preliminary Approval of this Class Action Settlement", November 4, 2016, and a Settlement Class definition as follows:

> Any and all individuals and/or entities located in any state, district, or territory
> of the United States that received one or more advertisements or solicitations via

facsimile from Defendants during the Class Period.

(Doc. 26-1, p. 2).  However, at the hearing on the Motion for Preliminary Approval, the Court and the parties discussed amending the definition to account for an exception to the operation of the TCPA that exists where the unsolicited advertisement is sent "from a sender with an established business relationship with the recipient" 42 U.S.C. § 227(b)(1)(C)(i).   The Class Settlement Agreement was deemed modified by agreement to include the following definition of the proposed Settlement Class:

> All individuals and/or entities, who did not have an established business relationship with Trxade Group, Inc. and Westminster Pharmacy, LLC, located in any state, district, or territory of the United States that received one or more unsolicited advertisements or solicitations via facsimile from Defendants during the Class Period.

(Doc. 30).

Among other terms and conditions, the parties agreed to the creation of a Settlement Fund of $200,000.00 for payment of the Claims Administrator's expenses (estimated at $15,900.00), attorney's fees of 25% of the Settlement Fund plus costs and expenses (approximately $50,400.00), and the Class Representative's Incentive Award ($3,500.00) subject to Court approval, with the balance of approximately $130,200.00 to fund a Common Fund for pro rata payment of the claims by the Class Members, but not to exceed $1,000.00 per claimant (doc. 26-1, Class Settlement Agreement, doc. 33-1, Affidavit).  The parties also agreed that in addition to the cash payments, Class Members with valid claims would receive a 5% discount on their next purchase from Defendant Westminster (doc. 26-1). The parties also agreed that no funds would revert to the Defendants and that unallocated funds would be distributed as a *Cy Pres* award to the University of South Florida College of Pharmacy, with certain conditions (*Id.*).

After hearing the Motion for Preliminary Approval, the Court granted the unopposed

Motion and preliminarily approved the proposed Class Settlement Agreement and conditionally and preliminarily certified the Settlement Class (doc. 30).  The Court also designated Plaintiff's counsel James H. McFerrin and Diandra S. Debrosse Zimmerman as Settlement Class Counsel, designated Plaintiff as Class Representative, and designated JND Legal Administration d/b/a JND Class Action Administration as the Claims Administrator.

Pursuant to the Court's Order, Defendants provided a Notice List of the Class Members. Notice was given to the Class Members as set forth in the Declaration of the Claims Administrator's Senior Analyst (doc. 33-1).  Notice was provided as discussed herein in Section II.  As of January 24, 2017, and as of the date of the fairness hearing, February 21, 2017, the Claims Administrator had not received any objections and no Class Member had filed a request for exclusion from the Class Settlement (doc. 33-1).  Overall, a total of 430 claims were approved and the Claims Administrator estimates a payment of damages of approximately $302.79 for each of the approved claims (doc. 33-1, p. 4).

On February 21, 2017, the Court held the final fairness hearing and heard the parties on the Joint Motion for Final Approval.  The parties represented to the Court that the Settlement was fair, reasonable and adequate, and due to be approved.  The Court also heard Class Counsel's Motion for Award of Attorney's Fees, Expenses, and Incentive Payment.  No one appeared and objected to the Settlement.

II. Notice to the Class and the Claims Procedure

In the Order granting preliminary approval, the Court found that the forms of class notice proposed by the parties would provide reasonable, adequate and sufficient notice to the Class Members and met the requirements of due process (doc. 30).  The Court also preliminarily found that the proposed Plan for distribution of the Class Notice was the best practicable under the circumstances and was reasonably calculated to provide notice to all Class Members who were

4

identified by the Defendants (doc. 30).

Before the fairness hearing, Plaintiff provided the Court with a Notice of Compliance and an affidavit from the Claims Administrator's Senior Analyst, which outlined the steps taken to comply with the notice provisions that the Court had approved (docs. 30, 33, 33-1).  According to the Affidavit, after receipt of a Notice List from the Defendants, the Claims Administrator updated the address information and ascertained a mailing address for 29,846 potential Settlement Class Members of which 29,110 also had email addresses.  In late November 2016, the Claims Administrator sent notice by electronic mail or U.S. Mail post card to each Settlement Class Member identified on the Notice List and for whom a valid email address or mailing address could be ascertained.[2]  Notice was further disseminated by way of a press release to newspapers, websites, trade publications and similar sources. In addition, the Claims Administrator established and maintained a settlement-specific website where claim forms could be electronically filed, along with a toll free telephone number to be used by Class Members to obtain additional information (doc.  33-1).

The Notices informed the Class Members that to receive a cash payment they must submit a claim form, postmarked or submitted online on or before January 17, 2017, to the Claims Administrator.  The Notices also informed the Class Members that the final hearing would be held at the United States District Court for the Southern District of Alabama on February 21, 2107 and that more information could be obtained on the website (doc. 33-1). The Notices contained a summary of the Class Action Settlement and Class Settlement

---

[2]  A total of 2,502 emails bounced back or were undeliverable. The Claims Administrator mailed a postcard Notice to those Class Members. A total of 461 postcard Notices were returned as undeliverable. Of those, the Claims Administrator re-mailed Notice to 33 Class Members who had a forwarding address with the U.S. Postal Service. The Claims Administrator also mailed a postcard Notice to 861 Class Members that did not have an email address (doc. 33-1).

Agreement and directed the recipient to the website, the toll free number, or an address for the

Claims Administrator, to obtain a copy of the Class Settlement Agreement (doc. 33-1).  At the

website, a longer and more detailed form of the Notice warned the recipient to "Please read" the

notice "carefully as your rights may be impacted even if you do nothing at all" and when

discussing the various options – "Do Nothing", "Submit a Claim Form…", etc., explains again:

"Your legal rights are affected whether you act or not, and you have a choice to make now" and

contains a section captioned "Your Rights and Options" which gives information in a question

and answer form  (doc. 26-5).

As of January 24, 2017, there had been 67,687 views of the website and 33 calls to the

toll-free number.  Also, as of January 24, 2017, the Claims Administrator had received 6,027

claims.  Of those submitted, 5,528 were denied because they were from individuals that were not

found on the Notice, 17 were denied because they were postmarked after the deadline, and 52

were denied as duplicates. A total of 430 claims were approved (doc. 33-1).

Before final approval of a class settlement, "[t]he court must direct notice in a reasonable

manner to all class members who would be bound by the" proposed class settlement. Fed. R.

Civ. P. 23(e)(1). The Court has now reviewed the Notice of Compliance, the Affidavit, the

copies of the Notice attached to the Affidavit (doc. 33-1), and heard from counsel at the final

fairness hearing.  The Court finds that the Notice and the claims procedures as actually

implemented satisfy due process, meet the Rule 23(e)(1) requirements, and that the Notice

constitutes the best notice practicable under the circumstances as required by Fed. R. Civ. P.

23(c)(2)(B) for class actions certified under Rule 23(b)(3).[3]

III.  Certification of the Class Action

---

[3]  The Court preliminarily certified the Class under Rule 23(b)(3) (doc. 30, p. 10).

"Under Rule 23, certification is proper where the proposed [class satisfies] an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Karhu v. Vital Pharms, Inc*., 621 Fed. Appx. 945, 946 (11th Cir. 2015) (citing *Little v. T–Mobile USA, Inc*., 691 F.3d 1302, 1304 (11th Cir. 2012)). Also, "[f]or a district court to certify a class action, the named plaintiffs must have standing[.]" *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1268 (11th Cir. 2009) (quoting *Klay v. Humana, Inc.,* 382 F.3d 1241, 1250 (11th Cir. 2004)).

As to the ascertainability requirement, "Rule 23 implicitly requires that the "proposed class is adequately defined and clearly ascertainable." *Karhu*, 621 Fed. Appx. at 946 (citing *Little,* 691 F.3d at 1304 (internal quotation marks omitted). The Eleventh Circuit requires that the class definition "contain[ ] objective criteria that allow for class members to be identified in an administratively feasible way." *Id.*  There is no dispute that the class definition refers to objective criteria.  As to the second requirement, "[i]n order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified" *Id*. at 947.  "Identifying class members is administratively feasible when it is a 'manageable process that does not require much, if any, individual inquiry.' " *Id*. at 946 (quoting *Bussey v. Macon Cty. Greyhound Park, Inc*., 562 Fed.Appx. 782, 787 (11th Cir.2014)).

Plaintiff proposed using the Defendants' records for the fax numbers to which the faxed advertisements were sent.  However, Plaintiff "must also establish the records are in fact useful for identification purposes, and that identification will be administratively feasible." *Id.* In that regard, Plaintiff asserts that the Defendants produced to the Claims Administrator the email and facsimile records of the Settlement Class, which records were sufficient to identify Class Members and transmit notice to the Settlement Class.  Since Defendants waived for purpose of settlement any defense that certain Class Members may have consented to receive the facsimiles,

there was no need for the Claims Administrator to attempt to extract certain fax numbers from the Defendants' records.  In other words, this process of the Claims Administrator using the Defendants' list of all persons or entities to which it had sent a facsimile during the Class Period resulted in an administratively feasible method of identifying the Class Members. *Cf. Karhu*, 621 Fed. Appx. at 949 (affirming the district court's decision to reject a proposal to identify class members using sales data, which lacked explanation as to how the sales data would aid in class-member identification where it primarily identified third-party retailers and not class members). Therefore, the Court finds that the ascertainability requirement has been met.

As to the remaining requirements, the Court adopts and incorporates its prior findings that Plaintiff had standing to bring this class action and that the requirements of Fed. R. Civ. P. 23(a)[4] and Fed. R. Civ. P. 23(b)(3)[5] for certification of class actions were met (doc. 30, p. 6-13). Having determined that the requirements for final certification are met, the Class Action is finally certified. *See Little*, 691 F. 3d at 1303-1304 (providing a summary of the law governing class certification).

Accordingly, the Court finally certifies the Settlement Class, as defined in the Class Settlement Agreement, as amended, which consists of the following:

All individuals and/or entities, who did not have an established business

---

[4] The Rule 23(a) requirements for certification of any class action are: "(1) numerosity ('a class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses "are typical … of the class"'; and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1268 (11th Cir. 2009) (same).

[5] "A class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

relationship with Trxade Group, Inc. and Westminster Pharmacy, LLC, located in any state, district, or territory of the United States that received one or more unsolicited advertisements or solicitations via facsimile from Defendants during the Class Period.

(Doc. 30, p. 5).

IV. <u>The Class Settlement Agreement</u>

The Court must now decide whether to give final approval to the parties' Class Settlement Agreement. A class action can be settled "only with the court's approval." Fed. R. Civ. P. 23(e). Final approval may be given only after class notice and a hearing. *Id.* Overall, "[s]ettlement is generally favored because it conserves scarce judicial resources." *In re Smith*, 926 F.2d 1027, 1029 (11th Cir.1991) (citation omitted).

To reach its decision, the Court must analyze whether the Class Settlement Agreement is fair, adequate and reasonable and not the result of collusion. *Greco v. Ginn Development, Co., LLC,* 635 Fed. Appx. 628, 632 (11th Cir. 2015) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir.1977)); *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1217 (11th Cir. 2012) (same); Fed. R. Civ. P. 23(e)(2). The Court of Appeals for the Eleventh Circuit has identified six factors for the district courts to consider: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Greco,* 635 Fed. Appx. at 632 (citing *Bennett v. Behring Corp.,* 737 F. 2d 982, 986 (11th Cir. 1984)).

A. <u>Collusion.</u>

There is no evidence of collusion. The Class Settlement Agreement is the result of arm's-length settlement negotiations. The eminent jurist Judge Carroll mediated the settlement (doc.

26-7, Biography).  Skilled and experienced counsel represented all parties. There is no evidence

that the parties or their respective counsel engaged in any fraudulent or improper acts during this

litigation or the mediation process. To the contrary, the parties appear to have negotiated in good

faith to reach a compromise, and settle this action. *See Saccoccio v. JPMorgan Chase Bank,*

*N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("Where the parties have negotiated at arm's length,

the Court should find that the settlement is not the product of collusion.");  (citation omitted).

Accordingly, the Court finds that this factor weighs in favor of approving the Class Settlement

Agreement.

    B. Opinion of counsel.

     "In considering the settlement, the district court may rely upon the judgment of

experienced counsel for the parties." *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx

.429, 434 (11th Cir. 2012) (citing *Cotton*, 559 F.2d at 1330. Thus, "[a]bsent fraud, collusion, or

the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'"

*Id.*  Counsel for the parties indicated at the fairness hearing that the Class Settlement Agreement

was a fair, reasonable and adequate and that the Court should approve the Agreement.  The

parties are represented by skilled and experienced counsel. Plaintiff's counsel are class action

litigation specialist. Accordingly, the Court finds that this factor weighs in favor of approving the

Class Settlement Agreement.

    C. The likelihood of success at trial.

    "Plaintiff's likelihood of success at trial is 'weighed against the amount and form of relief

contained in the settlement.'" *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692

(S.D. Fla. 2014) (citing *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla.

2005)).  The Class Settlement Agreement provides approximately $130,200.00 to fund a

Common Fund for payment of the 430 valid claims filed by the Class Members (doc. 26-1, doc.

33-1).  Thus each Class Member will receive approximately $302.79.  The Class Members also receive a 5% discount coupon for their next purchase with Westminster.

At trial, Plaintiff would need to prove, among other elements, that the unsolicited faxed advertisements did not fall within the exceptions defined in 47 U.S.C. § 227(b)(1)(C), which rely upon consent of the recipient.  However, for purpose of settlement, Defendant relinquished any defense that consent was lacking.  Should the action have proceeded to trial, Defendants' defense may have increased the difficulty of success and enhanced the expense and uncertainty of the litigation. Thus if the Class Settlement Agreement is not approved, the ability of the Class Members to recover individually would be hindered by the risk that Defendants may prevail on this defense. *See Saccoccio*, 297 F.R.D. at 692 (addressing defendants "strong affirmative defenses" when considering the likelihood of success at trial and approving a settlement wherein the class members would receive 12.5% of the yearly premium charged for force-placed insurance).

Also, to receive treble damages under the TCPA, *see* subparagraph D herein, Plaintiffs would need to prove that Defendants acted willfully and knowingly when the faxed advertisements were sent.  Now, the Settlement Class Members will recover money damages of approximately $302.79 each and the 5% discount coupon, without proving that they did not consent to receive the faxed advertisement, without proving that the Defendants acted knowingly and willfully, and without the time and expense of litigation.

Additionally, the parties provided the Court with Defendants' financial statements, which indicate that their companies are not in good financial condition. Similar financial statements were considered during the mediation and in reaching the decision to create a Settlement Fund of $200,000, which resulted in the Common Fund of $130,200.00.  All of the financial statements indicate that Defendants are at risk of filing bankruptcy should this Class Settlement Agreement

not be approved.  Accordingly, the Court finds that this factor weighs in favor of approving the Class Settlement Agreement.

    D. The range of possible recovery and the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable.

    These two factors are "easily combined and normally considered in concert. In considering the question of possible recovery, the focus is on the possible recovery at trial." *Camp v. City of Pelham*, 2014 WL 1764919, at *3 (N.D. Ala. May 1, 2014) (citations omitted). The TCPA provides statutory damages for the "actual monetary loss" resulting from the violation[6] or "$500.00 in damages for each violation, whichever is greater". 47 U.S.C. § 227(b)(3)(B). The TCPA also provides for treble damages for each violation, $1,500.00, "[i]f the court finds that the defendant willfully or knowingly" violated the TCPA. 47 U.S.C. § 227(b)(3). Damages may be awarded for each facsimile transmission.  The Class Period extends from January 2012 through November 4, 2016.  Notice was sent to approximately 29,000 potential Settlement Class Members. Although a small number submitted claims (approximately 6,000) and an even smaller number were found to be valid Settlement Class Members (430), the range of possible recovery had the 29,000 recipients successfully joined the Class Action and the action proceeded to trial is significantly large.

    Although the monetary payment - $302.79 - to each of the 430 Class Members may fall

---

[6] The actual monetary loss may be minimal. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259 (11th Cir. 2015) ("The District Court, in its order, held that, because 'the paper and ink allegedly converted in the printing of a one-page fax had no underlying, intangible value, and ... the value of the paper and ink was minimal,' a 'conversion resulting from the printing of a one-page fax is *de minimis* ' and therefore such a claim must fail. We can find nothing in Florida law, however, that requires that the property have monetary value in order to be converted. While Palm Beach Golf could not prove that any employee saw the fax in question or that it was printed by its fax machine, the record reflects that its telephone line and fax machine were occupied on December 13, 2005 for one minute. Although the value of such an interruption is undoubtedly minimal, that does not warrant the dismissal of the claim.")

on the low end of the range of possible recovery, the Class Members will also receive a 5%

discount coupon for a purchase with Defendant Westminster.  Importantly, they will obtain this

recovery by submitting a claim form.  They will not incur the expense of litigation in pursuit of a

potentially small statutory recovery nor face the likelihood that Defendants would be unable to

pay damages should numerous suits be filed against them.  Accordingly, the Court finds that

these factors weigh in favor of approving the Class Settlement Agreement.

     E. The complexity, expense and duration of litigation.

     "First, there exists 'an overriding public interest in favor of settlement, particularly in

class actions that have the well-deserved reputation as being most complex.'" *Lipuma*, 406 F.

Supp. 2d at 1314 (citation omitted). "Complex litigation ... 'can occupy a court's docket for years

on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief

increasingly elusive.' ". . .  Thus, "[s]ettlement will alleviate the need for judicial exploration of

these complex subjects, reduce litigation cost, and eliminate the significant risk that individual

claimants might recover nothing."  *Id*. at 1323-1324.  "The Court should consider the vagaries of

litigation and compare the significance of immediate recovery by way of the compromise to the

mere possibility of relief in the future, after protracted and expensive litigation." *Id*. at 1323.

     As Plaintiff explained, litigating all issues with respect to Defendants' liability would be

difficult, time-consuming, and extraordinarily expensive for all parties. Skilled and experienced

attorneys who would thoroughly and vigorously litigate each issue represent each party.

Importantly, even if Plaintiff were successful, the litigation process would result in protracted

and expensive litigation with no promise of a significantly larger recovery especially in light of

Defendants financial condition and the possibility of bankruptcy.  As to duration, the Class

Settlement Agreement was obtained after discovery began but before the deadlines for

dispositive motions.  Therefore, this action was not of long duration.  However, had the class

action proceeded to trial, the action would have taken much longer to conclude. Accordingly, the Court finds that this factor weighs in favor of approving the Class Settlement Agreement.

      F. <u>The substance and amount of opposition to the settlement</u>.

      No one objected to the Class Settlement and no one sought exclusion from the Class. The absence of objections indicates a general acceptance of the Class Settlement Agreement by the members of the Class. *Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542, at *13 (N.D. Ala. July 17, 2012) ("[A] low percentage of objections points to the reasonableness of a proposed settlement and supports its approval.")   Accordingly, the Court finds that this factor weighs in favor of approving the Class Settlement Agreement.

      G. <u>The stage of proceedings at which the settlement was achieved.</u>

      "The stage of proceedings at which settlement is achieved is 'evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.'" *Montoya v. PNC Bank, N.A.,* 2016 WL 1529902, at *9 (S.D. Fla. Apr. 13, 2016) (appeal dismissed (July 11, 2016)) (quoting *Lipuma*, 406 F. Supp. 2d at 1324).   "At the same time, '[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations.'" *Montoya,* 2016 WL 1529902, at *9 (citing *Ressler v. Jacobson,* 822 F. Supp. 1551, 1555 (M.D. Fla. 1992)).

      The action was settled soon after discovery began. According to the docket, Plaintiff provided its initial disclosures and served its interrogatories and request for production in late March 2016.  Then, in May 2016, Plaintiff notified the Court of the forthcoming mediation.  By August 2016, the mediation had concluded and the Class Settlement Agreement had been signed. The parties exchanged documents, including the Defendants' financial statements, before and during the mediation and were able to fully review and address their respective positions based

upon those documents before the mediator.  Thus, the parties exchanged sufficient information to adequately evaluate the merits of their respective positions and weigh the benefits of settlement. Accordingly, the Court finds that this factor weighs in favor of approving the Class Settlement Agreement.

      H. The *Cy Pres* award.

      As part of the Class Settlement Agreement, no funds shall revert to the Defendants. Any unallocated sums shall be distributed as a *cy pres* award to the University of South Florida College of Pharmacy, and made solely to students studying at the University of South Florida College of Pharmacy who are sponsored by an independent pharmacist (doc. 26-1, p. 2, Settlement Agreement). Accordingly, the *cy pres* award is approved and the Court directs that the Claims Administrator make any *cy pres* award in accordance with the Class Settlement Agreement.

      I. Incentive Award to the Class Representative.

      "While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action. In fact, courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Waters v. Cook's Pest Control*, *Inc.,* 2012 WL 2923542, at *14 (N.D. Ala. July 17, 2012) (citations and internal alterations omitted).

      As the Court previously found, Plaintiff does not have any conflicts of interest with members of the Class and has adequately prosecuted this action (doc. 30).  Plaintiff obtained

competent Class Counsel, filed the Class Action Complaint, and participated in the mediation,[7] which resulted in the Class Settlement Agreement.  Moreover, Plaintiff undertook the risk that the litigation may not be successful and that the class action might not be certified.  For Plaintiff's continued services to the Class, the Court finally approves an incentive award of $3,500.00 to the Class Representative for services performed for the benefit of the Class Members.  The incentive award shall be made from the Settlement Fund escrow account.

J.   Fees of the Claims Administrator.

Previously, Plaintiff was authorized to retain JND Legal Administration, d/b/a JND Class Action Administration, as the Claims Administrator to implement the terms of the Class Settlement Agreement, provide notice to the Settlement Class members, receive and process settlement claims, and such other responsibilities as required by the Class Settlement Agreement or as may be agreed upon by the parties during the claims administration (doc. 30).  The Claims Administrator has now submitted a Notice of Compliance and Affidavit setting forth the actions taken to meet these duties prior to the final fairness hearing (doc. 33, doc. 33-1).  Upon consideration, the Court finally approves payment to the Claims Administrator in an amount not to exceed $15,900.00 for past and future services to be performed to effectuate the Class Settlement. The payment shall be made from the Settlement Fund escrow account.

K.   Appointing Class Counsel.

"An order court that certifies a class action must … appoint class counsel under Rule 23(g)…." Fed. R. Civ. P. 23(c)(1)(B). After consideration of the factors identified in Rule

---

[7]   Plaintiff's representative attended the mediation and signed the Settlement Agreement on behalf of Plaintiff (doc. 26-1, p. 6).

23(g)(1)(A),[8] and for the reasons set forth in the Order granting preliminary approval of Class Counsel  (doc. 30, p. 14-15), the Court affirms it prior conclusion that Diandra Debrosse Zimmerman and James McFerrin are adequate Class Counsel.  Accordingly, Zimmerman and McFerrin are finally appointed as Class Counsel.

    L.  <u>Conclusion</u>.

    For the reasons set forth herein, the Court approves the Class Settlement Agreement (doc. 26-1) as fair, reasonable, and adequate and not the result of collusion.  Accordingly, in accordance with the terms of the Class Settlement Agreement, Defendants shall pay $200,000.00 for the Settlement Fund from which attorney's fees and expenses as awarded in subsection VI of this Order, the Incentive Award, and the Claims Administrator's fees shall be deducted with the balance distributed to the Common Fund for pro rata distribution to the Settlement Class members who submitted claims, up to $1,000.00 per Settlement Class Member.  In addition to the pro rata distribution, the Settlement Class members shall receive a 5% discount coupon for use on their next purchase from Westminster Pharmaceuticals, LLC.  The Claims Administrator shall distribute any unallocated funds according to the *cy pres* provision in the Class Settlement Agreement as discussed in subparagraph H herein.

    The Claims Administrator shall begin distribution within thirty (30) days of this Order and shall file on or before **May 19, 2017, a final accounting** as to the distribution to the Settlement Class members, payment of the Incentive Award, payment of attorney's fee's and

---

[8]  "In appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action;(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;(iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(A)&(B).

expenses, payment to the Claims Administrator, and any *cy pres* distribution.

V.  Plaintiff and Class Counsel's Motion and Memorandum for Award of Attorney's Fees and Expenses.

Plaintiff moves the Court for an award of attorney's fees in the amount of $50,000.00 (doc. 31).  In support, Plaintiff provided the Court with the Affidavits of Class Counsel Zimmermann and McFerrin (docs. 31-1, 31-2).  Defendants do not oppose the motion, on condition that the in  Settlement Agreement receives final approval by the Court (doc. 32).

The Court having certified the Class Action and approved the Class Settlement Agreement turns to the Plaintiff's motion.  The amount requested, $50,000.00, is 25% of the Settlement Fund of $200,000.00, as defined in the Class Settlement Agreement  The law has long been that counsel who recovers a common fund for the benefit of others "is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745 (1980).  In the Eleventh Circuit, where the attorney's fees are based on a percent of an established common fund and were part of a "settlement agreement [that] was the result of extensive arms-length negotiations moderated by a court-appointed mediator" an award of "approximately 25% of the 'common fund' . . . is generally recognized as a reasonable fee award[.]" *Nelson,* 484 Fed. Appx. at 435 (quoting *Faught v. Am. Home Shield Corp*., 668 F.3d 1233, 1243 (11th Cir. 2011)).  In *Camden I Condo. Assoc., Inc. v. Dunkle*, 946 F.2d 768 (11th Cir.1991), the Eleventh Circuit held that "[a]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class". *Id*. at 774.  Since the decision in *Camden I*, the Eleventh Circuit "has often stated that the majority of fees in these cases are reasonable where they fall between 20–25% of the claims." *Faught*, 668 F.3d at 1242.

However, "[t]o avoid the problems and criticisms of a common fund fee award being

summarily granted as a percentage of the fund recovered without any findings supporting its reasonableness ... courts are now supporting their percentage awards with particular findings showing factors considered." *Camden I*, 946 F.2d at 775. "The factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary." *Id.* However, "the *Johnson* factors continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Id.* (citation omitted); *Poertner v. Gillette Co.*, 618 Fed Appx. 624, 628 (11th Cir. 2015), *cert. denied sub nom. Frank v. Poertner*, 136 S. Ct. 1453 (2016) (explaining that "district courts could also consider the twelve factors set forth in *Johnson*" to determine the reasonableness of a percentage fee from a common fund).

"Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Camden I*, 946 F.2d at 775; *Poertner,* 618 Fed Appx. at 628 (same). There may be "additional factors unique to a particular case which will be relevant to the district court's consideration." *Camden I*, 946 F.2d at 775.

Therefore, to facilitate appellate review, the Court "should articulate specific reasons for selecting the percentage upon which the attorneys' fee award is based" and "identify all factors upon which it relied and explain how each factor affected its selection of the percentage of the fund awarded as fees." *Id.* However, the Court need not conduct a lodestar analysis. *Id.* at 774.

A. The twelve *Johnson* factors.[9]

(1) The time and labor required.

Plaintiff states that as of the filing of the Motion for Award of Attorney's Fees and

---

[9] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974).

Expenses, more than of 230 hours had been logged by the Class Counsel (doc. 31, p. 9). Class Counsel states that these hours were "reasonably expended in investigating and prosecuting the class action" and were spent

> interviewing potential witnesses; researching potential causes of action; researching legal precedent and arguments for a multitude of unique legal issues presented in this matter; drafting pleadings and briefs; preparing and reviewing discovery and responses to such discovery; obtaining documents from Defendants and non-parties; reviewing, organizing, and analyzing all documents obtained through such discovery; meeting with and teleconferencing with co-counsel for Plaintiff; meeting and teleconferencing with Defendants' counsel regarding pleadings, scheduling, and discovery; researching and reviewing responses and correspondence in regard to Defendants' various defenses; attending court hearings; preparing for mediation; reviewing detailed financial records and documents related to Defendants; and drafting multiple documents related to potential settlement of this matter.

(Doc. 31-2, p. 5).

Time was also expended in preparing for the preliminary hearing, conferring with co-counsel, traveling to the Southern District and attending the hearing (doc. 31-1, p. 4).

The time spent and the labor involved generally appears to have been necessary for the prosecution and settlement of this Class Action. However, time spent "researching legal precedent and arguments for a multitude of unique legal issues" raises some concern in that the complaint indicated two straight-forward legal issues: Whether Defendants sent unsolicited faxes in violation of the TCPA and whether Defendants violated the TCPA by sending faxes that did not include the opt-out provision. Time spent "researching and reviewing responses and correspondence in regard to Defendants' various defenses" raises some concern because the recipients' consent to receive the facsimiles has been the primary affirmative defense addressed by the Plaintiff. Also, time spent "preparing and reviewing discovery and response to such discovery" may have been inadvertently included because the docket indicates that Defendants

did not serve any formal discovery upon the Plaintiffs.  Arguably, the parties could have engaged in informal discovery in preparation for the mediation.  However, despite these concerns, the Court finds that the hours expended indicate that the fee request is not wholly unreasonable.  Accordingly, this factor weighs in favor of awarding the requested attorney's fee.[10]

      (2) <u>The novelty and difficulty of the questions involved</u>.

Class Counsel proffers that junk fax class actions are a unique area of the law with changing legal precedents and varying statutory interpretations by the district courts.  That may be true.  However, as stated above, this Class Action involved two specific legal issues: Whether Defendants sent unsolicited faxes in violation of the TCPA and whether Defendants violated the TCPA by sending faxes that did not include the opt-out provision.  While this area of the law may not be well-settled, it also does not appear to be particularly novel[11] or difficult, even if the interpretations of the statute vary or change. This factor is neutral.

      (3) <u>The skill requisite to perform the legal service properly</u>.

Class Counsel assert that the complexity of the issues due in part to unique and changing legal precedent in junk fax class actions, and the fact that Defendants retained highly capable

---

[10]  Counsel also states that $450.00 per hour is a reasonable hourly rate for attorneys in complex class action litigation in Alabama (doc. 31-2).  Even though the Court is not required to conduct a lodestar analysis, *see Camden I*, 946 F.2d at 774 ("After reviewing *Blum*, the Task Force Report, and the foregoing cases from other circuits, we believe that *the percentage of the fund approach is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class. The lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards."), multiplying 230 hours by $450.00 per hour yields a lodestar of $103,500.00. Applying a reduced hourly rate that is more in line with the hourly rates for counsel of comparable skill and experience in the Southern District of Alabama, $300.00, yields a lodestar of $69,000.00.

[11]  The Court notes that Plaintiff has filed another junk fax action in this Court. *Family Medicine Pharmacy, LLC v. Perfumania Holdings, et al.,* Civil Action No. 15-0563-WS-C (S.D. Ala. 2015).

defense counsel with extensive experience in similar litigation, required a high degree of skill and practical experience to prosecute this Class Action.  Class Counsel assert that they possess this level of skill and experience.  The Court has considered Class Counsel's respective Affidavits outlining their combined experience in complex litigation, class actions and mass tort litigation.  The Court has also observed their performance. Since Class Counsel has shown that their collective high level of skill and experience contributed to the resolution of this action wherein the Class Members will obtain monetary relief and the 5% discount coupon, the Court finds this factor weighs in favor of awarding the requested attorney's fee.

(4) <u>The preclusion of other employment by the attorney due to acceptance of the case</u>.

Class Counsel argues that handling complicated class actions limits their "ability to maintain a high volume single event litigation practice" (doc. 31, p. 10).  However, Class Counsel Zimmerman states that she "routinely" works in "complex civil litigation, catastrophic personal injury, class action litigation, discrimination, and mass tort matters" (doc. 31-1, p. 4). Class Counsel McFerrin states that his practice focuses on "complex litigation, Worker's Compensation, employment matters, appellate practice, and mediation" and that he is currently working with Zimmerman "in a number of other class action cases" (doc. 31-2, p. 2, 4). However, there is no evidence that either counsel had to decline taking a case due to the pendency of this Class Action litigation.  Therefore, this factor is neutral.

(5) <u>The customary fee</u>.

Class Counsel took this action on a contingent fee basis.  Class Counsel state that a customary contingent fee in non-class actions are typically in the range of 33% to 50% and that courts have awarded similar percentage-based fees in class actions (doc. 31-1, p. 6, doc. 31-2, p. 6-7).  They assert that they limited their fee request to 25% in view of the limited recovery for the Class Members because of Defendants' limited financial resources (Id.).  The fee percentage

requested falls below the low-end of Class Counsel's customary contingent fee. Accordingly, this factor weighs in favor of awarding the requested attorney's fee.

    (6) <u>Whether the fee is fixed or contingent</u>.

    Class Counsel argue that by taking this action on a contingent basis they assumed the risk of non-recovery and their assumption weighs in favor of approving their fee request as reasonable. The Court agrees. Class Counsel expended time and labor to prosecute this action on behalf of the Class Members, and should receive reasonable compensation for their work and the assumption of the risk of non-payment. Accordingly, this factor weighs in favor of awarding the requested attorney's fee

    (7) <u>Time limitations imposed by the client or the circumstances</u>.

    Plaintiff did not provide any information as to any time limitations imposed by the Plaintiff or the circumstances. Review of the complaint and other documents does not indicate that Plaintiff was facing any statute of limitation or other expiring time period that would have required Class Counsel to perform a substantial amount of work in a short period of time in order to meet the deadline. Therefore, the Court finds that this factor is not relevant.

    (8) <u>The amount involved and the results obtained</u>.

    Class Counsel's efforts in this litigation and the mediation resulted in the Class Settlement Agreement, which requires the creation of a Settlement Fund of $200,000.00, a Settlement Fund of approximately $130,200.00 for distribution to Class Members, distribution of the 5% discount coupon, and stopped the unwanted fax advertisements. Class Counsel's efforts provided a recovery for the Class Members in the face of the possibility that the financially unsound Defendants might file bankruptcy before a recovery could be had. Their work conferred a substantial benefit upon the Class Members and therefore, they are entitled to a percentage award from the Settlement Fund. Moreover, Class Counsel reduced their customary percentage

fee, in view of the limited fund that they were able to recover. Accordingly, this factor weighs in favor of awarding the requested attorney's fee.

(9) The experience, reputation, and ability of the attorneys.

Class Counsel have provided their respective affidavits outlining their ability, skill and experience as Class Counsel as well as their educational backgrounds and accomplishments, overall practice areas, and service to the Bar on numerous respective committees (docs. 31-1, 31-2). They also assert that the result – obtaining the Settlement Fund and the 5% discount coupon – reflects their experience and ability. In that regard, applying their experience, skill and ability, Class Counsel ascertained that Defendants were not in good financial condition, obtained the best recovery available in view of the Defendants' limited financial resources, and limited their request for an attorney's fee to 25% of the Settlement Fund, in consideration of the limited recovery. Accordingly, this factor weighs in favor of awarding the requested attorney's fee.

(10) The "undesirability" of the case.

Plaintiff did not provide any specific argument as to the relevancy of this factor. However, Plaintiff did assert that class actions are complex, expensive, time-consuming, risky, and without guarantee of recovery. Thus, for some attorneys that assessment may render this class action litigation as undesirable. Accordingly, this factor weighs in favor of awarding the requested attorney's fee.

(11) The nature and the length of the professional relationship with the client.

Plaintiff did not provide any information as to the nature and length of its professional relationship with Class Counsel. Therefore, the Court finds that this factor is not relevant.

(12) Awards in similar cases.

Plaintiff did not provide any argument as to awards in similar cases. However, Plaintiff did state that 25% of the common fund – referred to herein as the Settlement Fund of

$200,000.00- is the "bench mark" fee in class action (doc. 31, p. 6, 10). The Eleventh Circuit Court of Appeals has indicated that an attorney's fee of 20% to 30% of a common fund is a generally found to be a reasonable and fair attorney's fee in this circuit.  *Faught*, 668 F.3d at 1243 (finding that the district court cited "well-settled law from this court that 25% is generally recognized as a reasonable fee award in common fund cases") (citing *Waters v. Intern. Precious Metals Corp.,* 190 F.3d 1291, 1294 (11th Cir. 1999) for the premise that "[t]he majority of common fund fee awards fall between 20% to 30% of the fund.").  Accordingly, this factor weighs in favor of awarding the requested attorney's fee.

B. Other factors.

"Other pertinent factors" identified in *Camden I,* "are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." 946 F.2d at 775. Class Counsel obtained a settlement before the parties' deadline for dispositive motion, thus saving time, expense, and use of court resources that would have been necessary to prosecute the class action. There were no objections to the Class Settlement Agreement. Class Counsel obtained a 5% discount coupon for the next purchase with Westminster Pharmaceuticals and the cessation of faxed advertisements. Accordingly, these factors weigh in favor of awarding the requested attorney's fee.

As a relevant factor "unique" to this action, *Camden I*, 946 F.2d at 775, Class Counsel ascertained that Defendants were not in good financial condition. However, Class Counsel negotiated the Class Settlement Agreement, which assures certain benefits to the Class Members without the risk of bankruptcy that may have occurred should the litigation continued. Accordingly, this factor weighs in favor of awarding the requested attorney's fee.

C. <u>Costs and expenses</u>.

In the Settlement Agreement, Defendants agreed that Class Counsel was entitled to recover costs or expenses not to exceed $400.00, subject to court approval (doc. 26-1, p. 3). Class Counsel now moves the Court for an award of expenses in the amount of $ 415.78.  Class Counsel states that $400.00 was expended for the filing fee and $15.78 was expended to perfect service, as shown by the copies of the receipts (doc. 31, doc. 31-3, p. 12-13).  Defendants do not oppose Class Counsel's request.  However, the Class Settlement Agreement was premised upon an award of only $400.00. The Class Settlement Agreement having been approved by the Court, the request for expenses in the amount of $400.00 is now approved.

D. <u>Conclusion.</u>

Upon consideration of the foregoing, the Court finds that 25% of the Settlement Fund, or $50,000.00 is a reasonable attorney's fee for Class Counsel's representation and is consistent with Eleventh Circuit precedent. The Court also finds that Plaintiff is entitled to costs in the amount of $400.00.  Accordingly, Plaintiff is awarded $50,000.00 as a reasonable attorney's fee, and $400.00 for costs, to be paid from the Settlement Fund by the Claims Administrator, within thirty (30) days of this Order.

VI. <u>Release.</u>

In class action settlements, the release "may include all claims that arise out of the same course of conduct alleged in the Complaint, known and unknown claims, or even claims over which the court lacked jurisdiction." *Faught v. Am. Home Shield Corp.*, 2010 WL 10959223, at *15 (N.D. Ala. Apr. 27, 2010), *aff'd,* 668 F.3d 1233 (11th Cir. 2011) (citations omitted).  To that end, the Class Settlement Agreement contains a broadly worded, nationwide and class-wide release provision, which sets forth as follows:

Upon entry of a written order finally approving this Class Settlement Agreement

26

that is no longer appealable, the members of the Class, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby jointly and severally, and for anyone claiming by or through or under each of them, or as assignee of them fully and completely remise, release, acquit, and forever discharge Westminster and Trxade, their subsidiaries, parents, sisters and other affiliated companies, agents, employees, representative, officers, directors, attorneys, managers, shareholders, members, partners, and successors and assigns, jointly and severally, of and from all rights, claims, demands, damages, actions and causes of action, whether arising at law or in equity, choate or inchoate, known or unknown, which the Class may now have or may have had, including but not limited to any right, claim, action, cause of action, suits, debt due, sum of money, account, reckoning, covenant, contract, controversy, agreement, promise, representation, obligation, restitution, damage and demand whatsoever, at law or in equity, whether arising under statute, contract, or common law, resulting from defendants' delivery of advertisements or solicitations to the Class via facsimile.

(Doc. 26-1, p. 4-5).

The Court finds that the release provision "properly settles all matters between the class members and released parties" as a result of the Defendants' conduct as identified in the Class Settlement Agreement, that the release covers "claims based on the same factual predicate as the litigation being settled" and "is tailored to prevent the relitigation of settled questions at the core of this class action." *Greco*, 635 Fed. Appx. 628, 635–36 (11th Cir. 2015) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir.1981) (for the premise that the federal court "may release not only those claims alleged in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint")).  Accordingly, the Court approves the Release provision as set forth in the Class Settlement Agreement.

VII. <u>Conclusion</u>

Upon consideration of the foregoing, it is ORDERED, ADJUDGED, and DECREED, as follows:

(1) The parties' Joint Motion for Final Approval of Settlement and Entry of Final Judgment (doc. 34) is GRANTED.

(2)  Plaintiff and Class Counsel's Motion and Memorandum for Award of Attorney's Fees, Expenses, and Incentive Payment for Class Representative (doc. 31) is GRANTED.

(3) The Court approves the Class Action Settlement as fair, reasonable, and adequate, and not the result of collusion.

 (4)  The Claims Administrator shall begin distribution within thirty (30) days of this Order and shall file on or before **May 19, 2017, a final accounting** as to the distribution to the Settlement Class members, payment of the Incentive Award, payment of attorney's fee's and expenses, payment to the Claims Administrator, and any *cy pres* distribution.

(5) This action is dismissed with prejudice.

(6) The Court retains jurisdiction over this Class Action Settlement.


DONE and ORDERED this the 17th day of March 2017.


**/s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**